IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT

OF OKLAHOMA

**FILED**

JUL 0 7 2025

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____, DEPUTY

STEVEN GLEN BYRD,

    Plaintiff,

v.

EMILY PIRRONG,

in her individual and official

capacity as Assistant District Attorney,

MICHAEL CARRINGTON,

in his individual and official

capacity as DHS Caseworker

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CIV-25-747-SLP

JURY DEMAND- NO

Defendants.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Steven Glen Byrd, appearing pro se, files this Complaint for Declaratory and Injunctive Relief against the above-named Defendants. This case arises from ongoing violations of the Indian Child Welfare Act (ICWA), due process under the Fourteenth Amendment, retaliation under the First Amendment, and denial of confrontation rights under the Sixth Amendment. Plaintiff is the biological father of A.P., a Choctaw child currently in DHS custody. Plaintiff seeks immediate relief to halt continued violations of federal law and to protect his parental rights.

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (Federal Question), § 1343 (Civil Rights), and 28 U.S.C. § 1367 (Supplemental Jurisdiction).

2. Declaratory relief is authorized by 28 U.S.C. §§ 2201–2002.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as the events giving rise to this claim occurred primarily in Oklahoma County, Oklahoma.

PARTIES

4. Plaintiff Steven Glen Byrd is a resident of Pottawatomie County, Oklahoma, and the biological father of A.P., a child with confirmed Choctaw heritage.

5. Defendant Emily Pirrong ("ADA Prong") is an Assistant District Attorney for Oklahoma County. She is sued in her individual and official capacity for her role in presenting and perpetuating false allegations, retaliatory litigation practices, misrepresentation of facts and legal standards, and suppressing Plaintiff's rights to due process and confrontation.

6. Defendant Michael Carrington is a DHS caseworker formerly assigned to the case. He is sued in both individual and official capacities for providing false testimony, suppressing exculpatory recommendations, and retaliating against Plaintiff for protected legal actions.

FACTUAL BACKGROUND

7. Plaintiff is the biological father of A.P., a Choctaw child. Plaintiff has actively pursued reunification and legal custody of his son since September !9 2024.

7-A.  Plaintiff sought emergency relief in the Oklahoma Supreme Court on two separate occasions May 8 2025 Case # 123074 Denied Jurisdiction: Filed May 28 2025 Case # 123132 Jurisdiction Denied and through the filing of writs of mandamus, asking the high court to intervene in constitutional violations, ICWA violations, and judicial misconduct that were ongoing in the lower court. In both instances, the Oklahoma Supreme Court declined to assume original jurisdiction, issuing orders stating that all justices denied jurisdiction. As a result, Plaintiff has exhausted state remedies and has no adequate relief available in state court. Federal intervention is now necessary to prevent irreparable harm

8. On October 1, 2024, DHS removed the child from the maternal aunt without proper notice to the biological father or to the Choctaw Nation, in violation of ICWA.

8-A. Failure to Notify or Include Plaintiff or Legal Father  Emergency Custody
Action On or about October 1, 2024, DHS removed A.P. from the maternal aunt's
home without providing notice to Plaintiff, despite knowing his identity as the
biological father. Prior to the removal, Plaintiff had contacted DHS to report
concerns regarding the child's safety and clearly identified himself as the father. He
also informed DHS that the child had Choctaw heritage. Nevertheless, Plaintiff was
excluded from the emergency custody process, and no attempt was made to contact
or notify him before or after the initial hearing. This lack of notice violated Plaintiff's
fundamental due process rights and ICWA's requirements for placement and
intervention.

9. On October 4, 2024, a judge in Pottawatomie County granted Plaintiff emergency
custody of A.P. in Case No. FP-2024-162. Despite this, DHS and the District
Attorney's Office continued to retain custody.

10. DHS and ADA Pirrong In her Petition Oct 10 2024, relied on false and
inflammatory hearsay, including a disproven allegation from the child's mother,
stating she found a piece of paper on Plaintiffs table stating he had Rape Charges,
wild and Inflammatory statement fiction Defendant Pirrong used it knowing it was
fiction to justify withholding custody from Plaintiff.

11. The Oklahoma State Bureau of Investigation (OSBI) background check submitted by Plaintiff showed no history of abuse or criminal conduct. This information was available to the State but ignored.

12. The child's Native American status was known prior to the remover of the child A.P. and concealed to circumvent the ICWA protections. Also, as early as October 3, 2024. DHS Admitted the child's Native states Despite this. DHS did not mail notice to the Choctaw Nation until October 29, 2024—28 days after removal.

12-A. Failure to Reassess Alleged Danger and Denial of Custody After DHS took custody of A.P., no DHS worker returned to the maternal aunt's home to verify whether any actual danger existed. The removal was based on hearsay received during a phone call, not on direct investigation or credible evidence. In reality, the legal father had retrieved the child from another relative and then placed the child safely with Plaintiff, the biological father. Later, while Plaintiff was away, the maternal aunt obtained the child from Plaintiff's granddaughter using only an informal note. It was from the aunt that DHS ultimately took custody of the child.

Despite knowing the Plaintiff's identity and safe involvement, DHS declined to return the child to the legal father, stating that they feared he would give the child back to Plaintiff despite

the child's safe placement with Plaintiff or the legal father, DHS relied on a false and retaliatory claim made by the child's mother while she was incarcerated. She told DHS caseworker Kristi Vance that she had found a piece of paper suggesting Plaintiff had a criminal history — a fabricated claim made out of spite to prevent Plaintiff from receiving custody. On information and belief, the District Attorney's office had already conducted background checks confirming no such charges existed but proceeded to use the false allegation anyway to justify state custody. As a result, DHS unjustly denied custody to both the biological and legal fathers.

13. Importantly, Plaintiff's home and property were evaluated for safety on three separate occasions. First, DHS caseworker Kristi Vance conducted an in-home visit during the period when Plaintiff was receiving visitation and concluded that the home was safe. Additionally, in February 2025, DHS caseworker George Perry conducted two separate home visits and likewise determined that Plaintiff's home and property were safe and appropriate for the child. Despite these consistent safety assessments, DHS failed to consider Plaintiff as a placement and instead relied on false allegations and fabricated concerns to justify continued state custody

14. On November 21, 2024, the court found "good cause" to deviate from ICWA-compliant placement based on false allegations, without providing Plaintiff an opportunity to cross-examine witnesses or test the evidence.

15. Plaintiff has never been granted a full evidentiary hearing to confront or rebut the hearsay evidence presented against him.

16. Michael Carrington provided false statements in court, including unqualified psychological conclusions that Father Byrd "views his child as an object," which were used to restrict visitation.

17- Retaliation by DHS Based on Protected Speech

In addition to the May 28 2025 phone call with DHS supervisor Cree Smith, where it was admitted that old abuse allegations that were never proven , TikTok posts were the factor in denying reunification, Plaintiff was also subjected to retaliatory restrictions on visitation and participation in his child's care. Caseworker Michael Carrington and others at DHS began limiting Plaintiff's access and falsely portraying him as unstable after he filed motions in court and publicly criticized DHS on social media. The agency's conduct was not grounded in any valid risk assessment, but rather was a direct response to Plaintiff's exercise of First Amendment rights and legal advocacy.

17-A. Retaliation and Abuse Cover-Up by Michael Carrington

Michael Carrington, the assigned DHS caseworker, engaged in a pattern of retaliatory and unethical conduct after Plaintiff raised concerns about abuse occurring in A.P.'s foster placement. During a video visit, Plaintiff witnessed A.P. attempt to show a visible bruise on the side of his face. As the foster mother appeared to react with hostility, the video feed was abruptly cut off. When it resumed, A.P. was lying on a small child's blanket in a hallway with items and household goods. Plaintiff captured a screenshot of the scene, which showed that the child had been made to lie on the floor.

in a cramped, unsafe environment, with so little room that any person walking through the hallway would be forced to step over or on him. Plaintiff believes this

may explain the origin of the bruising and other signs of mistreatment. He had bruises on ever visit at this foster home, number three he is now on his fourth home he has been treated very badly by DHS he was never aboard by his real family ever at all.

17.-B. Rather than investigating the child abuse, Carrington retaliated against Plaintiff for exposing the abuse. Foster Mother alleged, falsely, that the child was being disciplined for "throwing cards at the television." However, at the time of the incident, the child had no cards, was not near the television, and was clearly attempting to show his injury to Plaintiff. her fabricated explanation was used to justify the child's mistreatment and deflect attention from the abusive conduct of the foster parent .Plaintiff reported the abuse to DHS until the child was remover .When Carrington came to court he aligned Plaintiff had manipulated the firster family so Plaintiff need no contact with the Foster Family one of his Lies in open court .Now the Plaintiff has no ability to oversee the welfare of his child one moor of the dozens of violations of ICWA.

Plaintiff named Carrington in a Mandamus in the Oklahoma Supreme Court naming him for misconduct and failure to follow ICWA.. Plaintiff stated clearly in open court, May 12 "I know my child is being abused. "the court reporter altered this to read "I know my child is being disciplined," It is in the court minuets which fundamentally changed the meaning and falsely implied Plaintiff endorsed the treatment. Plaintiff would never have made such a statement and categorically denies it. Carrington's conduct—cutting the video, suppressing evidence, making false

psychological claims, statements—constitutes a malicious pattern of retaliation and concealment designed to undermine Plaintiff's parental rights and shield DHS from accountability. Carrington stated in open court " Father visitation to be conducted in a therapeutic environment only due to the father seeing his child as a possession rather then a child .He was never around the Plaintiff but for a short period of time not qualified to make a statement like that not true only one of many lies by Carrington in Court not sworn in .

17.-C Upon information and belief, the removal and continued custody of the minor child were not supported by credible evidence but instead relied on hearsay, misrepresentations, and retaliatory actions by state actors. The Defendants, including ADA Emily Pirrong and DHS caseworker Michael Carrington, took actions that violated Plaintiff's constitutional rights and the Indian Child Welfare Act (ICWA), as set forth below:

17-D. Defendant Pirrong included inflammatory hearsay from the child's mother in the 10-day petition, despite knowing—based on available OSBI background

checks—that the allegations were false and discredited. She cited the allegations

"according to the mother" as a way to distance herself from responsibility, while

knowingly submitting them to the court to justify continued custody.


17-E

(Retaliation )


Plaintiff further alleges that Assistant District Attorney Emily Pirrong has engaged in

a continuing pattern of retaliatory conduct, including misrepresenting the plain

language of a court order for the purpose of manufacturing grounds for contempt

proceedings. The court's original order states only that "any/all parties are prohibited

from using any other agency names, specific names, pictures, etc. on social media."

Despite this narrow language, Ms. Pirrong has falsely claimed that the order bars

Plaintiff from speaking generally about DHS or this case, and has threatened

sanctions or contempt based on her own expanded interpretation.


This conduct amounts to fraud upon the court, carried out in bad faith and for

improper purposes. Ms. Pirrong's intent appears to be to suppress protected First

Amendment speech, punish Plaintiff for filing lawful motions and federal pleadings,

and create an illusion of noncompliance where none exists. Her threats are part of a

broader retaliatory scheme intended to obstruct justice, discredit the Plaintiff, and

divert attention from the constitutional and statutory violations already committed by DHS and the prosecution.

17-F. DHS failed to mail ICWA notice to the Choctaw Nation until October 29, 2024—28 days after removing the child—despite having documented knowledge of the child's Native American heritage. No ICWA compliance hearing was held within the required 30-day timeframe, in violation of 25 U.S.C. § 1912 and applicable Oklahoma statutes. Nine months now and no evidentiary hearing as required by Law ICWA with in thirty days

17-G. Defendant Carrington and others retaliated against Plaintiff for protected First Amendment speech, including social media posts and TikTok videos criticizing DHS actions. This retaliation resulted in restrictions on visitation and additional burdens placed on reunification.

17-H. Plaintiff was denied the opportunity to cross-examine DHS caseworker Carrington and the CASA volunteer, violating the Sixth Amendment. Their statements were treated as evidence despite Plaintiff never being allowed to confront or challenge them in a meaningful way.

17-I. The minor child has suffered ongoing emotional harm, including depression,

withdrawal, and loss of hope for reunification. These harms are the direct result of

and unsupported claims.

18. ADA E.W.Childeres  filed oppositions and responses that included personal

attacks, irrelevant civil case records from over a decade ago, and threats of sanction,

all of which appear designed to intimidate Plaintiff and silence his public speech.

18-A. Judge Kaitlyn Allen is not named as a defendant in this action. However, she

played a central role in the violations described in this Complaint, and her actions are

included for factual context. Judge Allen presided over the juvenile case involving

A.P., during which she permitted unconstitutional restrictions on Plaintiff's visitation

and failed to enforce the requirements of the Indian Child Welfare Act (ICWA).

These included holding an ex parte hearing without notice, relying on hearsay

statements as the basis for court orders, and denying Plaintiff a meaningful

opportunity to challenge the allegations used to withhold custody.

18-B. On November 21, 2024, Judge Allen held an ex parte hearing from which Plaintiff was improperly removed, in violation of due process. During that hearing, Judge Allen and the District Attorney discussed false and inflammatory allegations made by the child's mother — allegations that were already discredited and which the court and prosecution knew or should have known were untrue, based on existing background records. Plaintiff's attorney, who was present, later informed him that the purpose of the hearing was to discuss and rely on these unverified statements to justify keeping the child in state custody beyond the 90-day ICWA deadline. Under both ICWA and Oklahoma law, the child should have been returned to Plaintiff no later than that date, as no clear and convincing evidence of danger existed. Nonetheless, Judge Allen extended DHS custody based solely on inadmissible hearsay, without an evidentiary hearing, and without permitting Plaintiff to confront the allegations. Present at that hearing were also the child's maternal aunt and grandfather, neither of whom provided competent evidence against Plaintiff. This hearing marked a turning point in Judge Allen's pattern of unlawful rulings that favor DHS and the prosecution regardless of legal standards or factual truth. Most recently, the District Attorney has attempted to call Plaintiff as a witness against himself in the upcoming bench trial, and Judge Allen has taken no steps to protect Plaintiff's rights — further demonstrating her ongoing bias and retaliatory conduct.

18-C. Plaintiff's visitation was originally set at once per week but was reduced to once every two weeks after DHS caseworker Michael Carrington falsely assured

Plaintiff that if he agreed to biweekly visits, Carrington would ensure the child would

be returned soon and that overnight visitation would begin in a short period of time.

Plaintiff, acting in good faith, agreed to the change. However, Carrington's promise

proved to be intentionally false, and no progress toward reunification followed.

Despite the clear evidence that DHS misled Plaintiff and used the visitation reduction

as a tactic to delay reunification, Judge Allen took no corrective action. She did not

restore weekly visitation or inquire into Carrington's misconduct, and instead,

continued to allow DHS to dictate the terms of visitation without lawful justification.


 18-D Judge Allen further enabled Carrington to give unsworn and unqualified

testimony in open court — including the false claim that Plaintiff "views the child as

a possession." Carrington had minimal personal contact with Plaintiff and was not

qualified to make psychological assessments, yet Judge Allen treated his statements

as dispositive. These actions demonstrate her ongoing pattern of granting DHS and

the District Attorney whatever they ask for, even when unsupported by admissible

evidence or expert input. Additionally, Judge Allen has continued to enforce vague,

retaliatory restrictions on Plaintiff's First Amendment rights, including broad speech

bans relating to his protected criticism of the case on social media. She has also

refused to address serious allegations of foster care abuse, and instead accepted

DHS's dismissive explanations without investigation. These decisions, taken

together, reflect a sustained pattern of judicial bias, retaliation, and constitutional

violations that remain ongoing and actionable under federal law.

19. ADA Pirrong also mischaracterized procedural documents, such as cover sheets and entry of appearance forms, as frivolous motions in an attempt to falsely portray Plaintiff as a vexatious litigant.


Ex Parte Young Doctrine

Plaintiff brings this action against Judge Kaitlyn Allen in her official capacity only, pursuant to the doctrine set forth in Ex Parte Young, 209 U.S. 123 (1908). Under this doctrine, state officials, including judges, may be sued in federal court for prospective declaratory and injunctive relief to prevent ongoing violations of federal law and the United States Constitution. Plaintiff does not seek monetary damages against Judge Allen, but instead seeks appropriate prospective relief to prohibit her from continuing to violate Plaintiff's rights under the First, Fifth, Sixth, and Fourteenth Amendments, and to compel her compliance with the Indian Child Welfare Act (ICWA) and applicable evidentiary and due process standards.

CLAIMS FOR RELIEF

COUNT I – VIOLATION OF THE INDIAN CHILD WELFARE ACT (ICWA)

20. Plaintiff re-alleges and incorporates all preceding paragraphs.

21. Defendants failed to comply with ICWA requirements, including timely tribal notification, use of qualified expert testimony, demonstration of active efforts to reunite the child with his biological family, and timely ICWA compliance hearings.

22. Defendants continued to retain custody of A.P. without clear and convincing evidence, without an evidentiary hearing, and without offering any services to the biological father.

Count I – Additional ICWA Violation: No Qualified Expert Testimony

22-A. At no point during the proceedings did DHS or the District Attorney present testimony from a qualified Indian Child Welfare Act (ICWA) expert witness, as required by 25 U.S.C. § 1912(f). The law mandates that continued custody by the State must be supported by evidence from a qualified expert establishing that serious emotional or physical damage to the child is likely to result if the child is not removed. No such testimony was ever offered in this case. The failure to provide an ICWA expert invalidates the

court's custody orders and violates federal law.

## COUNT II – VIOLATION OF DUE PROCESS (14th AMENDMENT)

23. Plaintiff re-alleges and incorporates all preceding paragraphs.

24. Plaintiff was denied notice, a meaningful opportunity to be heard, and the right to confront witnesses.

24-A.  Plaintiff further alleges that the District Attorney, Emily Pirrong, is deliberately attempting to label him as a "batterer" without any credible evidence in order to justify prolonged custody of the minor child. This designation is not supported by any criminal conviction or substantiated report, and appears to be a

strategic effort to delay reunification and impose unnecessary court-ordered services.
By falsely labeling Plaintiff in this manner, the state can extend the foster care
timeline by an additional 10 months or more. and in some cases repeat the process to
retain custody for multiple years. This practice appears designed not to protect the
child, but to secure ongoing federal funding under Title IV-E, which financially
rewards the state for each month the child remains in custody. Plaintiff believes this
misuse of the child welfare system, rooted in financial incentives and retaliatory
intent, constitutes a clear violation of his constitutional rights and inflicts irreparable
harm on both father and child.

24-B. The State, through the District Attorney's Office, has produced discovery
materials that are false, inflammatory, and legally irrelevant—including documents
referencing a decades-old civil matter that resulted in no conviction. and which has
no bearing on Plaintiff's relationship with the minor child. These materials appear to
have been introduced for the sole purpose of smearing Plaintiff's character and
influencing the court's perception of him. despite having no probative value under
the rules of evidence. The inclusion of this material—particularly in a bench trial
setting where the judge acts as both fact-finder and gatekeeper of evidence—
irreparably taints the fairness of the proceeding.


 24_C   Plaintiff asserts that the admission of such evidence violates his rights under
the Fourteenth Amendment. Violates ICWA standard of Evidence.  denies him a fair

hearing, and contributes to a pattern of judicial bias and prosecutorial overreach. The inflammatory nature of these accusations, once placed in the court record, renders a fair adjudication impossible and supports Plaintiff's request for immediate federal injunctive relief or dismissal of the deprived child action with prejudice as well.

25. The State has relied on hearsay and untested accusations to continue depriving Plaintiff of access to his child for over nine months. Oct.1 2024

26. Plaintiff was denied the opportunity to cross-examine DHS caseworker Michael Carrington CASA Volunteer and was also denied a forum to confront and rebut the false allegations made by the child's mother.

COUNT III – VIOLATION OF RIGHT TO CONFRONT WITNESSES (6th AMENDMENT)

27. Plaintiff re-alleges and incorporates all preceding paragraphs.

28. Plaintiff was denied the right to confront adverse witnesses and evidence used against him, including Michael Carrington and the mother's false accusations. Now the ADA Pirrong has entered false Allegations form 20 years earlier form when the Plaintiff was Scammed out of five Properties . Plaintiff was denied the right to confront adverse witnesses and evidence used against him, including DHS caseworker Michael Carrington and the child's mother. Defendant Pirrong improperly introduced irrelevant allegations from over 20 years ago concerning a civil matter involving a foreign national. These old claims had no bearing on Plaintiff's relationship with the minor child and were introduced solely to prejudice the court against him.

29. These violations directly impacted the continued custody determination and unjustly deprived Plaintiff of his child.

COUNT IV – RETALIATION FOR PROTECTED SPEECH (1st AMENDMENT)

30. Plaintiff re-alleges and incorporates all preceding paragraphs.

31. Defendants retaliated against Plaintiff for engaging in protected speech, including

social media posts and filings in the Oklahoma Supreme Court.

32. The restrictions on visitation and threats of contempt and sanctions are directly

linked to Plaintiff's public criticism of DHS and the court process.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following
relief:

1. A declaratory judgment that Defendants have violated Plaintiff's rights under the
First, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and
under the Indian Child Welfare Act (ICWA);

2. An injunction prohibiting Defendant Judge Kaitlyn Allen, in her official capacity,
from:

Enforcing vague, overbroad, or retaliatory orders restricting Plaintiff's speech, in violation of the First Amendment;

Allowing the use of unsworn testimony, hearsay, or unqualified lay opinion as a basis for restricting visitation or continuing adjudication;

Permitting or participating in further ex parte hearings that deny Plaintiff's right to notice, confrontation, and due process;

Continuing to suppress or ignore Plaintiff's legal custody rights based on the October 4, 2024 Emergency Custody Order issued by the Pottawatomie County District Court;

Failing to hold a required ICWA compliance hearing pursuant to 25 C.F.R. § 23.110, or otherwise failing to comply with ICWA mandates;


3. An injunction prohibiting Defendant Michael Carrington, in his official and individual capacity, from:

Retaliating against Plaintiff for constitutionally protected speech;

Making false statements or misrepresentations in support of continued state custody;

Participating in any future decisions involving the minor child;


4. An injunction prohibiting Defendant Emily Pirrong, in her official and individual capacity, from:

Knowingly using false, untested, or hearsay allegations to support adjudication or deny custody;

Retaliating against Plaintiff for protected First Amendment speech or for filing this federal action;

Attempting to compel Plaintiff to testify as a witness against himself in the state deprivation proceeding;

5. An injunction prohibiting Defendant Emily Pirrong, in her official and individual capacity, from:

Referring to Plaintiff as a "batterer", or requiring him to undergo any batterer-related services, classes, or assessments based on false, unverified, or retaliatory allegations that are contradicted by known background information;

Introducing or relying on partial, inflammatory, or prejudicial evidence that lacks probative value and violates Oklahoma Evidence Code § 2403, as well as Plaintiff's rights under the Fifth and Fourteenth Amendments;

Using misleading or character-based statements to justify custody restrictions without legal foundation;

6. An order requiring that the child, A.P., be returned to Plaintiff's custody, in recognition of the October 4, 2024 Emergency Custody Order and due to the State's failure to present any admissible, credible, or timely evidence of danger;

7. An order dismissing the underlying state adjudication, based on the failure to comply with ICWA, denial of due process, and the reliance on unverified, prejudicial, and unconstitutional evidence;

8. An order directing Judge Allen to comply with the requirements of ICWA, including the holding of a full compliance hearing under 25 C.F.R. § 23.110, if the case is not dismissed;

9. An injunction restoring Plaintiff's visitation rights to a minimum of once per week in accordance with the original schedule, and prohibiting future retaliatory reductions based on false or untested claims;

10. An award of costs and any additional declaratory or injunctive relief this Court deems just and proper under the circumstances;

11. No monetary damages are sought at this time.

12. Grant such other and further relief as this Court deems just and proper.

33. This case has been a bad faith case from the beginning.

34. Plaintiff just learned in discovery the State A.D.A. Pirrong intends on calling Plaintiff as a witness in his own bench trial for the State total violating all the sixth Amendment .

If Plaintiff change residence during the pendency of this case, Plaintiff will promptly notify the Clerk of Court.

Executed this 7$^{+h}$ day of __July__ , 2025.

Respectfully submitted,

*Steven Glen Byrd*

---

Steven Glen Byrd 802 North Minnesota Avenue Shawnee, OK 74801 Phone: (918) 882-4956 Email: SteveByrdAaronsDad55@yahoo.com Pro Se Plaintiff

VERIFICATION AND NOTICE

I, Steven Glen Byrd, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief. *Steven Glen Byrd*